IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 930 |
| | ) | |
| LAWRENCE J. LIGAS and LABE BANK, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On August 27, 2004, the United States of America ("Government") filed a first amended complaint seeking to reduce an allegedly unpaid federal income tax assessment against defendant Lawrence J. Ligas ("Mr. Ligas") to judgment and to enforce a tax lien against Mr. Ligas's home in Chicago, Illinois. (Dkt. No. 1). Mr. Ligas' Chicago, Illinois home is subject to a mortgage held by Labe Bank and so the Government has named Labe Bank as a co-defendant. (*Id.*) On November 3, 2004, Labe Bank answered, counterclaimed against the Government and Mr. Ligas, and filed a third-party complaint against third-party defendants Lisa M. Ligas, Mr. Ligas' wife, unknown owners and nonrecorded claimants of Mr. and Mrs. Ligas' Chicago home. On June 1, 2006, the Government filed a pending motion for summary judgment seeking a declaration from this court that Mr. Ligas is liable to the United States for unpaid federal taxes and foreclosure on the federal tax lien associated with the alleged unpaid taxes currently attached to Mr. Ligas' home in Chicago, Illinois. (Dkt. No. 173). The Government alleges that Mr. Ligas owes both individual income taxes and income and FICA taxes withheld from the employees of L.J. Ligas' Inc via the trust fund recovery penalty. 26 U.S.C. § 6672. For the reasons set forth below, this court declares that Mr. Ligas is liable for unpaid taxes to the United States.

BACKGROUND

Mr. Ligas was the president, sole stockholder and director of L.J. Ligas, Inc., a corporation in the electrical contracting business. (Dkt. No. 176 at ¶¶ 12, 13). The Government alleges that Mr. Ligas owes back taxes, interest and penalties on his 1988, 1989 and 1990 personal income taxes. (*Id.* at ¶ 3). It also alleges that Mr. Ligas owes income and FICA taxes withheld from the wages of the employees of L.J. Ligas, Inc. for the last three quarters of 1987 and the first quarter of 1988. (*Id.* at ¶ 4). The Government concludes that Mr. Ligas owes $319,883.60 as of October 24, 2005. (*Id.* at ¶ 6). Mr. Ligas responds that he does not owe any money to the Government because the Government has failed to follow the required procedures to assess any alleged taxes against Mr. Ligas. Labe Bank holds a $200,000 mortgage on the Ligas' home in Chicago executed by Mr. Ligas and signed by Mrs. Ligas to the extent of waiving her homestead exemption in 2000. (Dkt. No. 182 at ¶¶ 10, 11). Labe Bank and the Government agree that Labe Bank's mortgage has priority over the Government's tax claim in respect to any proceeds from the Ligas' home except the Government argues that any late fees owed by Mr. Ligas to Labe Bank do not take priority. (*Id.* at ¶ 26). Labe Bank argues that Mr. Ligas is in default on the mortgage and therefore Labe Bank is entitled to foreclosure on the mortgage.

This court devoted significant time and effort addressing preliminary issues in this case. The initial complaint in this case was filed on February 6, 2004 (Dkt. No. 1), but it took over a year before the Government could demonstrate personal jurisdiction over Mr. Ligas. (Dkt. Nos. 9, 42, 43, 63, 70). On July 8, 2005, this court concluded that there was personal jurisdiction over Mr. Ligas, and despite Mr. Ligas' objections, Mr. Ligas filed an answer and the parties began discovery. (Dkt. Nos. 70, 71, 73, 94). The Government and Labe Bank moved for summary

judgment at various times during the discovery period. This court had to deny those motions without prejudice, pursuant to Rule 56(f), so that Mr. Ligas could have a full opportunity to complete discovery. (Dkt. Nos. 87, 97, 111, 119, 125, 155, 168). Mr. Ligas has now had a full opportunity to conduct discovery and this court, along with Magistrate Judge Keys, has addressed Mr. Ligas' arguments during discovery. (Dkt. Nos. 83, 99, 101, 104, 105, 110, 132, 138, 142, 145, 168). Discovery was completed on June 20, 2006 (Dkt. No. 175). This court will now address the Government's pending motion for summary judgment. Labe Bank and Mr. Ligas are currently in the process of briefing Labe Bank's pending motion for summary judgment.

## LEGAL STANDARDS

Under Rule 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). In evaluating a motion for summary judgment, this court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) ("The primary purpose of summary judgment is to isolate and dispose of factually unsupported claims."). A

party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *see, e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (citing *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). The evidence relied upon in defending a motion for summary judgment must be competent evidence of a type otherwise admissible at trial. *Stinnett v. Iron Work Gym/Exercise Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

## ANALYSIS

"Deficiencies determined by the Commissioner of Internal Revenue are presumed to be correct and the taxpayer bears the burden of proving otherwise." *Kikalos v. Commissioner*, 434 F.3d 977, 982 (7th Cir. 2006); *see e.g.*, Pittman *v. Commissioner*, 100 F.3d 1308, 1313 (7th Cir. 1996) ("The Commissioner's tax deficiency assessments are entitled to the 'presumption of correctness.' This presumption imposes upon the taxpayer the burden of proving the assessment is erroneous."). As the Seventh Circuit stated in *Ruth v. United States*,

> In general, courts will not look behind an assessment to evaluate the procedure and evidence used in making the assessment. Rather, courts conduct a *de novo* review of the correctness of the assessment, imposing the risk of nonpersuasion on the taxpayer. In certain quite limited circumstances, however, courts recognize that an assessment should not be accorded even a rebuttable presumption of correctness. For example, when the assessment is shown to be without "rational foundation" or "arbitrary and erroneous," the presumption should not be recognized. ... As long as the procedures used and the evidence relied upon by the Government to determine the assessment had rational foundation, the inquiry focuses on the merits of the tax liability, not on IRS procedures.

823 F.2d 1091, 1094 (7th Cir. 1987).

FICA taxes are owed by a corporation and therefore to recover against Mr. Ligas

individually pursuant to the trust fund recovery provision, 26 U.S.C. § 6672, the Government must also demonstrate that the Mr. Ligas is (1) the "responsible person" and (2) that he willfully failed to see that the employee's withheld income and FICA taxes were paid to the Government. *United States v. Kim*, 111 F.3d 1351, 1357 (7th Cir. 1997). A responsible person had "sufficient control" over the corporation's finances so that he could allocate corporate funds to pay the withheld income and FICA taxes to the Government. *Bowlen v. United States*, 956 F.2d 723, 728 (7th Cir. 1992). Indicia of being the responsible person includes owning stock or holding an entrepreneurial stake in the corporation, signing checks or being able to stop the issuance of checks. *Id.* "The delegation of the duty to turn over the taxes [to another] does not relieve a responsible person from liability." *Id.* Willful failure to pay withheld employee's income and FICA taxes is defined as a "voluntary, conscious and intentional" decision not to pay the taxes but there need not be "specific fraudulent intent or evil motive" as the willful standard can be satisfied through reckless disregard for a known risk that the taxes may not be paid. *United States v. Thomas*, 41 F.3d 1109, 1114 (7th Cir. 1994). "A responsible person willfully fails to remit withheld taxes to the Government if he pays other creditors after he knows of the employer's failure to pay the withheld funds to the Government." *Id.*

The Government, through its Local Rule 56.1 material, provides the Declaration of IRS employee Marilyn Ganser, Certificates of Assessments and Payments (IRS Form 4340) and Mr. Ligas' personal and corporate quarterly tax returns (Forms 941 and 1040) to demonstrate that: (1) the federal income tax assessments were made against Mr. Ligas on November 18, 1991 for years 1988, 1989 and 1990; (2) a trust fund recovery penalty assessment was made against Mr. Ligas on March 4, 1991 pursuant to 26 U.S.C. § 6672; (3) notices of the assessments and demands for payment were sent to Mr. Ligas; and (4) the assessed taxes remain outstanding and

5

unpaid. (Dkt. Nos. 173-5, 173-6, 173-11 through 173-23). The Form 4340s (Dkt. Nos. 173-20 through 173-23) provide evidence that the Government assessed Mr. Ligas with individual taxes from 1988 through 1990 and the withheld employee income and FICA taxes for the period ending March 31, 1988. *See United States v. Feda*, No. 05 C 1767, 2006 WL 897887, at *2 (N.D. Ill. Apr. 3, 2006) (citing *United States v. Brown*, 820 F. Supp. 2d 374, 384 (N.D. Ill. 1993) ("The information obtained from the IRS Form 4340 to assess the tax liability is entitled to the presumption of correctness and the taxpayer bears the burden of refuting the presumption.")).

As for the trust fund recovery issue, the Government has established that Mr. Ligas was the responsible person for paying the withheld employee income and FICA taxes for L.J. Ligas, Inc. and that he willfully failed to pay these taxes through Mr. Ligas's deposition testimony of December 7, 2005. On the issue of Mr. Ligas as the responsible person, Mr. Ligas stated that he signed the company's Form 941s and he put down his title as "President" on the Form 941s. (Dkt. No. 173-14 through 173-17). He also admitted that he (1) started the business, (Dkt. No. 173-4 at pg. 5), (2) paid an attorney to incorporate the business, (*Id.* at pg. 6), and (3) ran the business by himself. (*Id.* at pgs. 7-8). Mr. Ligas testified that "I was the president and there was no stockholders, so I guess the only person that there would be I. ... All I know is me, myself and I." (*Id.* at pgs. 7-8). Furthermore, although the Form 4340 is sufficient proof to establish the tax assessment, Mr. Ligas admitted that he had employees working for him at L.J. Ligas, Inc., thus supporting the Government's position that withheld employee income and FICA taxes would have been owed by L.J. Ligas, Inc. (*Id.* at pg. 10).

On the issue of willful failure to pay the taxes, Mr. Ligas testified that he had an employee, Colette Mystke, ("Mystke") working as his office manager. (*Id.* at pg. 11). (*Id.* at pg. 12). Mr. Ligas let Mystke go from the business after determining that she was failing to do her

job properly. (*Id.* at pgs. 17-18). Upon firing Mysteke, Mr. Ligas learned that he "owed taxes." (*Id.* at pg. 20). According to Mr. Ligas's December 7, 2005 deposition testimony "he had no clue what was going on" with the federal tax returns after he let Mystke go despite being told by his accountant that taxes were owed. (*Id.* at pg. 23). Mr. Ligas testified that he instead relied on his accountants to solve the problem. (*Id.* at pg. 23).

The Government's evidence establishes the presumptive correctness of the assessment of the taxes and the fact that they remain unpaid. The evidence also establishes Mr. Ligas' personal responsibility for the payment of the withheld employee's income and FICA taxes as he was the responsible person who willfully failed to pay the taxes. The burden is on Mr. Ligas to rebut this presumption. Mr. Ligas does not dispute that he earned the income reported on his tax returns or that L.J. Ligas, Inc. withheld the income and FICA taxes from his employees. However, Mr. Ligas argues that the Government's attempt to provide the tax returns as evidence should be rejected as they are inadmissible evidence. Government counsel's declaration states that he received the Form 1040s from Mr. Ligas and the Form 941s from the IRS. Mr. Ligas argues that Government counsel would not be the proper witness in support of this evidence as Government counsel lacks personal knowledge about the authenticity of these documents. This court must reject Mr. Ligas' argument as various available witnesses including Mr. Ligas, his former accountant and IRS employees could testify as to the authenticity of these documents and therefore these tax returns, if properly tendered by the Government, would be admissible evidence at trial.

Mr. Ligas's second argument attacks the validity of the Form 4340. He points out that the Form 4340s do not mention an erroneous release of the tax lien by the Government on his Chicago home in 2001. He also points out that the IRS has a practice of one employee signing

the Form 4340s in place of the appropriate IRS official. However, none of these arguments rebuts the Government's position that Mr. Ligas owed the taxes and failed to make the required payments. He has provided no evidence on the substantive issue of his alleged failure to pay the taxes as required. Nor has he provided evidence to demonstrate that the assessment process in his case was so arbitrary and erroneous as to refute the traditional presumption in favor of the Government's assessment. *See Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987).

Mr. Ligas also states that he would like to go to trial so that he could provide testimony to refute the Government's position that he wilfully failed to pay the FICA taxes under § 6672. Mr. Ligas' position is that he relied on others to handle his financial dealings. Mr. Ligas appears to suggest that he was not willful due to his lack of understanding of financial information. He also appears to suggest that the fact that he was the victim of violence could impact the issue of whether he was willful.

Mr. Ligas testified in his deposition that he was born on July 10, 1959. (*Id.* at pg. 4). He also testified that he was shot when he was 20 or 21 years old. (Dec. 7, 2005 Tr. at pg. 7). Consequently, Mr. Ligas was either shot in 1979 or 1980, seven years before the alleged taxes were due. Mr. Ligas, however, provides no information in his Local Rule 56.1 statement that he has any relevant testimony to provide on the willfulness issue. *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999) (Summary judgment is the movement in the lawsuit "when a party must show what evidence it has that would convince a trier of fact to accept its version of events.")). The only evidence in the record is that Mr. Ligas was told by his accountant after Mystke was fired by Mr. Ligas that Mr. Ligas owed money to the Government in taxes. The evidence is that Mr. Ligas did not follow up on his tax liability, continued to operate his business, and instead hoped that his accountant would take care of the tax situation for him. This

is not a defense to willfulness as Mr. Ligas continued to operate his business in reckless disregard for his responsibility to pay his employee's withheld income and FICA taxes to the Government.

Mr. Ligas' final argument is that the Government cannot collect on its assessment based on the release of the tax lien in 2001. The Government concedes that it released the tax lien in error in 2001 but the lien was placed back on the property in 2003. The fact that the lien was released, however, does not effect Mr. Ligas' financial obligation to the Government. The Government correctly notes that Mr. Ligas is confusing the purposes of a lien and an assessment. The IRS did not abate the assessment of the tax liability. The release of the lien only involves the issue of the Government's priority on Mr. Ligas's property in relationship to other lien holders. It does not effect the fact that Mr. Ligas owes money to the Government for unpaid taxes.

## CONCLUSION

For the reasons set forth above, this court, on the evidence in the record that establishes undisputed material facts, grants the Government's June 1, 2006 motion for summary judgment to the extent that this court finds and declares Mr. Ligas liable to the United States for unpaid taxes. (Dkt. No. 173). Mr. Ligas is declared to be liable to the United States for the unpaid income taxes, interest and penalties on his 1988, 1989 and 1990 personal income taxes and, pursuant to the trust fund recovery penalty provision, 26 U.S.C. § 6672, for income and FICA taxes withheld from the wages of the employees of L.J. Ligas, Inc. for the last three quarters of 1987 and the first quarter of 1988 in the amount of $319,883.60 as of October 24, 2005. The Government has not filed any documentation or proof establishing the amounts that have accrued and are owed by Mr. Ligas since October 24, 2005. The Government is to file by no later than

August 28, 2006, a statement of the monetary figures and support thereof, establishing the exact amounts remaining unpaid by Mr. Ligas and owing to the United States as of August 15, 2006, September 1, 2006 and September 15, 2006 in each unpaid category of taxes, interest and penalties, as well as the total amount due from Mr. Ligas. The Government is to submit by no later than August 28, 2006 its proposed final judgment order listing the amount owed by Mr. Ligas to the United States through means of the "Proposed_Order_Holderman@ilnd.uscourts.gov" e-mail account.

The Government has failed to provide sufficient evidence to support its second requested relief of foreclosure on the Government's tax lien levied on Mr. Ligas' property and consequently, this court denies the Government's requested relief of foreclosure. The court notes that Labe Bank's third-party and counterclaim for foreclosure presents a state law claim. Diversity does not exist between Labe Bank and the counter-defendants or the third-party defendants and this court has resolved the federal claim in this case. Consequently, this court relinquishes supplemental jurisdiction over Labe Bank's counterclaim and third-party claim for foreclosure. Labe Bank's July 20, 2006 motion for summary judgment (Dkt. No. 181) is moot. This case will be concluded upon the entry of the final judgment declaring the amount remaining unpaid by Mr. Ligas' and owing to the United States on that date.

                    ENTER:

                    *James F. Holderman*
                    JAMES F. HOLDERMAN
                    Chief Judge, United States District Court

Date: August 15, 2006